497 P.2d 90

**STATE of Arizona, Appellee,**

v.

**Mark Stanley WILSON, Appellant.**

**No. 1 CA–CR 409.**

Court of Appeals of Arizona,
Division 1,
Department B.

May 23, 1972.

Ross P. Lee, Public Defender by William C. Blakley, Deputy Public Defender, Phoenix, for appellant.

Gary K. Nelson, Atty. Gen. by Mary Z. Chandler, Asst. Atty. Gen., Phoenix, for appellee.

JACOBSON, Judge.

The question involved in this appeal is whether evidence of defendant's alleged prior bad acts was so prejudicial that a mistrial should have been declared.

In April, 1970, a three-count information was filed against the defendant, charging him with first degree burglary, aggravated battery, and grand theft.[1] The jury found the defendant not guilty of burglary, but did find him guilty of aggravated battery. Defendant, who was sentenced to serve not less than two years nor more than three years, has appealed from the judgment of guilt and sentence.

Defendant contends that the trial court abused its discretion in denying a motion for mistrial when the victim, the sole witness, made reference on two occasions to prior bad acts of the defendant and that the trial court's cautionary instructions to the jury to disregard that testimony did not cure the prejudicial error with the result that defendant was unable to receive a fair trial.

The two occasions where alleged bad acts were referred to, occurred on direct examination, the first being:

"Q. Now how could you tell it was Mark Wilson?

"A. Well, his face was only about two feet from mine, and I have known the kid, well, at that time it was for about a year and he was, I ordered him out of my house about one hundred times, but he keeps on coming back."

the second being:

"Q. When was the last time that Mark Wilson had permission to come into your apartment. . .?

"A. I don't know the exact date. It was the second time he beat me up."

In criminal prosecutions evidence of prior bad acts of the defendant not amounting to adjudicated felonies is usually inadmissible. However, such evidence may be relevant and admissible when it tends to establish motive, intent, absence of mistake or accident, identity, a common plan or scheme, or an element of the offense charged. State v. Maggard, 104 Ariz. 462, 455 P.2d 259 (1969); State v. Hardin, 99 Ariz. 56, 406 P.2d 406 (1965); also see, Udall, "Arizona Law of Evidence" § 115 (1960).

The appellee takes the position that the witness' first remark, regarding the number of times that he had ordered the defendant out of his house, does not specifically refer to prior bad acts. We agree. The inference which reasonable men could draw from the remark is obvious—he was familiar with the defendant because of prior contacts. The most that can be said for the statement is that the defendant committed trespass on multiple occasions and was ordered to leave. If trespass can be classified as a "bad act", such testimony was relevant as to the identity of the defendant as the perpetrator of the aggravated battery and tended to show familiarity of the victim with the defendant. As such, it clearly falls within the exceptions enumerated above.

It is undeniable that the witness' second remark, referring to the "second time he beat me up", does not fit within any of the exceptions to the general rule and as such it was inadmissible.

After the second remark was made, the trial court being also of the opinion that it was inadmissible, granted defense counsel's motion to strike the unresponsive portion of the answer and the jury was instructed to disregard it. The question before this court is whether the failure of the trial court to grant a mistrial based upon this inadmissible remark was prejudicial error. The granting or denying of a motion for mistrial is largely a discretionary function of the trial court, State v. Martin, 105 Ariz. 265, 463 P.2d 63 (1969) especially where the alleged error is subject to a motion to strike and a cautionary

1. This latter charge was dismissed on the morning of the trial.

instruction. *See* State v. Favors, 92 Ariz. 147, 375 P.2d 260 (1962).

Defendant contends however, that the court's cautionary instruction was inadequate to protect his right to a fair trial. As authority for his position, defendant relies on State v. Hunt, 2 Ariz.App. 6, 406 P.2d 208 (1965), which held that a denial of a motion for mistrial was an abuse of discretion notwithstanding striking of the irrelevant testimony relating to prior bad acts of the defendants. The court in *Hunt* reasoned that it was highly unlikely whether the jurors after five days of trial "could completely expunge from their minds" the inadmissible testimony of four witnesses.

■ The facts in the instant case are totally different from those existing in *Hunt* where the jury was exposed to a barrage of inadmissible bad acts by the defendant, while here one isolated reference, not elicited by the prosecution, was inadvertently slipped in. Under such circum-

stances, we are of the opinion that the rule to be applied in determining whether the trial court abused its discretion in denying the motion for mistrial is whether there was reasonable probability that the verdict may have been different had the jury not been exposed to the inadmissible testimony. State v. Brady, 105 Ariz. 190, 461 P.2d 488 (1969).

■ In light of the victim's positive identification of the defendant as the one who attacked and beat him up and defense counsel's subsequent reference to this prior bad act,[2] we are of the opinion that the verdict would not have been different had the jury not heard the testimony.

We therefore bow to the trial court's ruling in this regard and hold that it did not abuse its discretion in denying the motion for a mistrial.

Judgment affirmed.

HAIRE, C. J., and EUBANK, J., concur.

---

2. On cross-examination defense counsel asked the witness the following questions:
"Q. Did you ever pull a gun on him?
"A. Yes, Sir.
"Q. Did he ask for it, did he deserve it?
"A. Yes, Sir."
In order to clarify those statements the prosecutor, on redirect asked the witness about the circumstances surrounding the incident: "[H]e started over towards me, and he knocked me over the end of the chair and broke two ribs. He was on top of me and beating me in the head then. I pulled [the pistol out of my pocket] and put it right in his chest. And I couldn't pull the trigger."